UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
(At Louisville)

| | | |
|---|---|---|
| LOUISVILLE GALLERIA, LLC, et al., | ) | |
| | ) | Civil Action No. 3:20-CV-733-CHB |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| PHILADELPHIA INDEMNITY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiffs Louisville Galleria, LLC, Louisville Galleria
Services, LLC, Louisville Galleria Garage, LLC, Cordish Operating Ventures, LLC, and the
Cordish Companies, Inc's Motion for Summary Judgement, [R. 18]. Defendant Philadelphia
Indemnity Insurance Company ("Philadelphia") filed a Response, [R. 22]. Plaintiffs filed a Reply,
[R. 23], and Philadelphia filed a Sur–Reply, [R. 26]. This matter is now ripe for review. For the
reasons stated below, the Court will grant Plaintiffs' Motion for Summary Judgment.

I.     **Background**

In April 2013, Louisville Galleria Services, LLC ("LGS"), entered into a Protective Service
Agreement ("the Agreement") with American Service Industries, Inc. ("ASI").[1] [R. 18, p. 5]. The
Agreement provided that ASI would provide security and "protective services" for LGS, including
for the Fourth Street Live! entertainment area in downtown Louisville. *Id.* at 6. The Agreement

---

[1] Two other entities, Federal Building Services, Inc. and CDA Incorporated DBA MaxSent., entered the Agreement
at the same time as ASI. However, those entities are not relevant to this action because for all periods relevant to this
suit, ASI was the only entity providing security services for Fourth Street Live!. [R. 18, pp. 5–6 n. 3; R. 18–5, Ex. E,
pp. 14–15, 124:5–11, 127:6–19].

also contained insurance and indemnity provisions, requiring ASI to procure insurance and to name certain Plaintiffs as additional insureds:

> ***Contractor shall be liable for all conduct, of any kind, of its personnel while such personnel are performing any duties under this Agreement***, or any other such related work for Client under this Agreement. In this regard, ***Contractor agrees to maintain the following polices of insurance, to the extent commercially available, in its own name, and in the names of Client***, Entertainment Consulting International, LLC, Entertainment Concepts Investors Management Company, LLC; Entertainment Concepts Investors, LLC; Entertainment Consulting Services, LLC; The Cordish Company; ***The Cordish Companies Inc.***; Four Street Realty Holdings, LLC; Fourth Street Realty Holdings Investors, LLC; ***Louisville Galleria, LLC***; Louisville Galleria Investors, LLC; Louisville Saloons, LLC; ARB KY, LLC; Hotel Louisville, LLC; FSL Management, LLC; FSH Management, LLC; FSL Entertainment, LLC; Downtown Sports, LLC; Fourth Street EDC, LLC; Hogan Holdings 3, LLC ***as additional insureds*** …

> a. Comprehensive General Liability on an occurrence form … with limits of not less than $4,000,000 combined single limit per occurrence, covering acts and omissions of Contractor, ***bodily injury*** and property damage …

> Contractor shall indemnify and hold harmless and defend Client and Client's parent company or companies, subsidiaries, related entities, shareholders, directors, officers, affiliates, employees, agents, and successors or assigns … from all suits, actions, complaints, or claims of any character, type or description, brought or made on accounts of or resulting from any injuries, libel, false imprisonment or damages howsoever caused, received or sustained by any person or persons or property arising out of, or occasioned by, the acts of Contractor or its director, officers, employees, personnel, agents, and successors or assigns while performing any duties on the Client's premises or elsewhere under this Agreement[.][2]

[R. 18–4, Ex. D, pp. 4–5, ¶¶ 8–9] (emphasis added).

In accordance with the Agreement, from January 1, 2015, to February 15, 2016, Philadelphia insured ASI under a commercial liability policy—policy number PHPK1274034 ("Policy"). [R. 18, p. 3; R. 22, p. 3].  Importantly, the Policy contained a blanket additional insureds

---

[2] LGS, Louisville Galleria, LLC, and The Cordish Companies, Inc. are all expressly mentioned as being covered in the Agreement as additional insureds while Louisville Galleria Garage, LLC and The Cordish Operating Ventures, LLC are not. *See* [R. 18–4, Ex. D, p. 4, ¶ 8]. Plaintiffs state the latter two LLCs are related entities within the terms of the Agreement. [R. 18, p. 21]. Philadelphia concedes this point. *See* [R. 22, p. 2 n. 1]. Thus, the Court will consider the matter undisputed and treat Louisville Galleria Garage, LLC and The Cordish Operating Ventures, LLC as related entities under the terms of the Agreement.

endorsement (the "AI Endorsement") that, among other things, addressed who was granted additional–insured status under the Policy:

> **Blanket Additional Insureds by Contract –** *Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured* on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal advertising injury**"** *caused, in whole or in part, by***:**
>
> (1) Your acts or omissions; or
> (2) The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

[R. 18–1, Ex. A, p. 88; R. 18, p. 4; R. 22, p. 5].

On January 26, 2016, Kristen McMains ("McMains") was attacked by a third–party assailant in a parking garage owned and operated by the Plaintiffs and sustained serious injuries. [R. 18, p. 5; R. 22, pp. 1–2]. As a result, on January 23, 2017, McMains filed suit in Jefferson Circuit Court (the "McMains Suit") against the Plaintiffs and Towne Park, LLC, alleging that the Plaintiffs breached their duty to provide security and protect her from harm. [R. 18, p. 5; R. 18–2, Ex. B]. On the day of the incident, two ASI security personnel were actively patrolling the Fourth Street Live! area, which included the parking garage where McMains was attacked. [R. 18, p. 9]. However, McMains did not name ASI as a defendant in her state court action.[3] [R. 22, p. 2]; *see also* [R. 18–2, Ex. B].

Shortly after McMains filed her suit, Plaintiffs' representative, Dana Gausepohl ("Gausepohl"), tendered the defense and indemnity to ASI based on the terms and provisions of

---

[3] Plaintiffs allege McMains failed to name ASI as a defendant because, at the time she filed her suit, she operated under the mistaken belief that Towne Park, LLC, not ASI, provided security for the garage. [R. 18, p. 2]. They also claim that McMains did not correct her error because by the time she realized it, the statute of limitations had lapsed. [R. 23, p. 8].

the Agreement, attaching both the Agreement and the complaint filed by McMains in state court (the "Underlying Complaint"). [R. 18, pp. 7–8; R. 18–6, Ex. F]. The email requested that the message be forwarded to ASI's insurer, Philadelphia. [R. 18–6, Ex. F]. On April 25, 2017, Rick Hartman ("Hartman"), a senior claims specialist at Philadelphia, denied Gausepohl's request for defense and indemnity on the mistaken ground that ASI personnel were not working the day of McMains' attack. [R. 18, p. 8; R. 18–7, Ex. G.  In response, on May 5, 2017, Gausepohl sent Hartman ASI's billing records, which confirmed that two ASI employees were patrolling on January 26, 2016, during the time of the attack. [R. 18, p. 9; R. 18–8, Ex. H; R. 18–9, Ex. I]. Nevertheless, Philadelphia refused Plaintiffs' request for defense and indemnity. [R. 18, p. 9].

On February 27, 2018, Plaintiffs filed a Third–Party Complaint against ASI in the McMains Suit, alleging (1) indemnity, apportionment, and contribution, and (2) breach of contract. [R. 18–10, Ex. J]. In January 2021, via mediation, Plaintiffs and McMains entered into a settlement agreement, which expressly excluded ASI. [R. 22, p. 2; R. 20–1, Ex. O–2, p. 2, ¶ 2]. Thus, the remaining claim in the McMains Suit is Plaintiffs' third–party claim against ASI for apportionment, indemnification, and breach of contract. [R. 22, p. 3]. On February 22, 2021, the Jefferson Circuit Court granted ASI's Motion to Continue the Trial. [R. 22–3, Ex. C]. Since then, there have been no other filings in the McMains Suit. [R. 22, p. 3].

On November 2, 2020, Plaintiffs filed this declaratory judgment action against Philadelphia pursuant to 28 U.S.C. § 1332 and 28 U.S.C, § 2201, *et seq.* [R. 1, p. 3, ¶¶ 11–13]. Plaintiffs seek, among other things, (1) a ruling that Philadelphia owed the Plaintiffs a defense in the McMains suit; (2) indemnification from Philadelphia for the settlement reached between the Plaintiffs and McMains in the McMains Suit; and (3) recognition that Plaintiffs are "additional insureds" pursuant to the Agreement and Philadelphia's Policy. [R. 1; R. 18, p. 3]. Plaintiffs moved for

summary judgment on July 9, 2021, arguing they are additional insureds under the Policy and entitled to a defense and indemnity. Philadelphia countered that Plaintiffs are not additional insureds because the named insured (here, ASI) did not "cause[], in whole or in part," McMains' injuries, as evidenced by the fact that ASI was never named by McMains in the Underlying Complaint. [R. 22]. This dispute largely revolves around the scope and application of the AI Endorsement's phrase "caused, in whole or in part, by."

## II.    Standard of Review

Because Kentucky is the forum state, its substantive law will be used. *Rawe v. Liberty Mut. Fire. Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006).[4] However, federal procedural law will govern as applicable, including in establishing the appropriate summary judgment standard. *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When determining a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine

---

[4] Both parties apply Kentucky law and make no argument that the substantive law of any other jurisdiction applies. [R. 18, pp. 14–15; R. 22, p. 7].

5

issue" for trial. *Id.* at 324. Where "a party fails to support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat the fact as undisputed. FED. R. CIV. P. 56(e)(2). A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III.   Analysis

#### A.  Interpretation Under Kentucky Law

Under the Policy, Philadelphia agreed to provide insurance to Plaintiffs as additional insureds for "liability for . . . bodily injury or property damage . . . caused, in whole or in part, by [ASI's] act or omissions" or "[t]he acts or omissions of those acting on [ASI's] behalf. [R. 18–1, Ex. A, p. 88]. The Court could find no case interpreting the specific language in the AI Endorsement ("caused, in whole or in part, by") under Kentucky law, and the parties failed to cite any. Even so, Kentucky law provides a general framework for interpreting the scope of insurance policies and whether an insurer owes a duty to defend and indemnify the insured in an underlying lawsuit.

"As a general rule, interpretation of an insurance contract is a matter of law for the court." *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)); *see also Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 507 (6th Cir.2003). "To ascertain the construction of an insurance contract, one begins with the text of the policy itself." *Pryor v. Colony*

*Ins.*, 414 S.W.3d 424, 430 (Ky. Ct. App. 2013). Where the terms of the policy are not ambiguous, their ordinary meaning governs. *See James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (citing *Washington Nat'l Ins. Co. v. Burke*, 258 S.W.2d 709 (Ky. 1953)) ("[W]here not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed."). "[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875–76 (Ky. 2002). Unless the terms in the contract have acquired a technical meaning, they "must be interpreted according to the usage of the average man[.]" *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986).

However, if the terms of the contract are ambiguous, the court cannot apply the "ordinary meaning" of the terms. *McBride v. Acuity*, No. 5:10–CV–173, 2011 U.S. Dist. LEXIS 141498, at *7 (W.D. Ky. Dec. 7, 2011), *aff'd*, 510 F. App'x 451 (6th Cir. 2013). "An insurance policy is ambiguous only when the provision to be construed is reasonably susceptible of more than one meaning." *Id.* (quoting *Foster v. Ky. Hous. Corp.*, 850 F. Supp. 558, 561 (E.D. Ky. 1994)). If an ambiguous term or provision is subject to two potential interpretations, "one favorable to the insured and the other favorable to the insurer, the former will be adopted." *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994) (citing *Koch v. Ocean Accident & Guar. Corp.*, 313 Ky. 220, 230 S.W.2d 893 (1950)). The prevailing rule is that "uncertainties and ambiguities must be resolved in favor of the insured." *Fryman*, 704 S.W.2d at 206 (citing *Donohue v. Washington Nat'l Ins. Co.*, 259 Ky. 611, 82 S.W.2d 780 (Ky. 1935)).

### B.  The Duty to Defend

An insurer's duty to defend is broader than the duty to indemnify. *Lenning v. Commer. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (citing *James Graham*, 814 S.W.2d at 280). In

Kentucky, an insurer has a duty to defend "if there is any allegation in the complaint which potentially, possibly or might come within the coverages of the policy." *O'Bannon v. Aetna Cas. & Surety Co.*, 678 S.W.2d 390, 392 (Ky. 1984). The determination of whether a defense is required must be made at the outset of the litigation by reference to the complaint and known facts. *Lenning*, 260 F.3d at 581 (citing *James Graham*, 814 S.W.2d at 279). The Court will analyze whether Philadelphia had a duty to defend Plaintiffs by first determining the scope of the Policy/AI Endorsement and then assessing whether the allegations in the Underlying Complaint, coupled with the facts known by Philadelphia at the time of its denial, fall within the scope of the Policy. *See FirstEnergy Generation, LLC v. Valley Forge Ins. Co.*, 487 F. Supp.3d 630, 634 (N.D. Ohio 2020) (where the court utilizes the above analytical framework to determine whether the defendant had a duty to defend); *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (same). The Court will then turn to the indemnity question.

### i.  The Scope of the Policy/AI Endorsement

The AI Endorsement provides:

> **Blanket Additional Insureds by Contract –** *Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured* on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal advertising injury**"** *caused, in whole or in part, by***:**
>
> (3)  Your acts or omissions; or
> (4)  The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

[R. 18–1, Ex. A, p. 88] (emphasis added).

Plaintiffs argue they qualify as additional insureds under the plain language of the AI Endorsement because they meet each requirement of the endorsement, namely: (1) ASI was

"performing operations" for Plaintiffs at the time of McMains' attack; (2) the Plaintiffs and ASI "agreed in writing," via the Agreement, that the Plaintiffs would be additional insureds under ASI's policy with Philadelphia; and (3) "McMains' bodily injury was caused, in whole or in part, by ASI's acts or omissions in the performance of its ongoing security operations for these Plaintiffs." [R. 18, pp. 15–16].

First, it is uncontroverted that ASI was "performing services" for Plaintiffs under the Agreement when McMains was attacked, and Philadelphia makes no argument or showing to the contrary. [R. 18, p. 9; R. 18–5, Ex. E, p. 10, 59:7–11; R. 18–8, Ex. H; R. 18–9, Ex. I; R. 23, pp. 3–4]. Second, other than an unavailing argument that Plaintiffs put the Agreement in the record "without authenticating it," *see* [R. 22, pp. 9–10], Philadelphia makes no argument to rebut Plaintiffs' showing that ASI "agreed in writing in a contract or agreement" that Plaintiffs "be added as an additional insured on [ASI's] policy," as evidenced in the express provisions of the Agreement between ASI and Plaintiffs. [R. 18–1, Ex. A, p. 88]; *see also* [R. 18–4, Ex. D]. Instead, Philadelphia focuses on the third requirement—the "caused, in whole or in part, by" provision. Philadelphia argues Plaintiffs are not "additional insureds" under the AI Endorsement because "McMains' complaint does not allege that [Plaintiffs were] vicariously liable for the conduct of ASI," implying Plaintiffs are only insured against vicarious liability that is derivative of ASI's liability. [R. 22, p. 11]. Philadelphia also argues that the phrase "caused, in whole or in part, by" limits coverage of additional insureds to "situations where the [named] insured [here, ASI] is the proximate cause of the injury." *Id.* It contends ASI was not the proximate cause of McMains' injuries, but that Plaintiffs were solely responsible, noting McMains never sued ASI. Finally, Philadelphia argues that the developed facts in the McMains Suit illustrate that ASI was not the

proximate cause of McMains' injuries, and therefore, McMains' injuries were not "caused, in whole or in part, by" ASI. [R. 22, pp. 10–14]; *see also* [R. 18–1, Ex. A, p. 88].

The Court will first address Philadelphia's authentication argument related to the Agreement and will then analyze the scope of the AI Endorsement—specifically, its language limiting additional insured status to liability "caused, in whole or in part, by" ASI.

### a. Authentication

Philadelphia asserts that Plaintiffs are not additional insureds under the Policy's AI Endorsement because Plaintiffs must first show ASI assumed the liability of Plaintiffs in an "insured contract" per the Policy, and the Agreement fails to qualify as such because Plaintiffs "put the [Agreement] into the record without authenticating it." [R. 22, pp. 9–10] (citing [R. 18–1, Ex. A, p. 54]). The Sixth Circuit has generally held that "unauthenticated documents do not meet the requirements of Rule 56[(c)]" and must be disregarded by the court in deciding motions for summary judgment. *Alexander v. Caresource, Inc.*, 576 F.3d 551, 558 (6th Cir. 2009). However, a court may consider unauthenticated documents when deciding a motion for summary judgment "where the objecting party simply argue[s] that the proponent failed to authenticate the documents, as opposed to challenging the authenticity of the documents." *Thomas v. Nat'l Coll. of Va., Inc.*, 901 F. Supp.2d 1022, 1035 (S.D. Ohio 2012); *see also Moore v. Baptist Mem'l Coll. of Health Scis.*, *Inc.*, No. 08–2311, 2010 U.S. Dist. LEXIS 1219, at *16–17 (W.D. Tenn. Jan. 7, 2010) (citing *Starks–Umoja v. Fed. Express Corp.*, 341 F. Supp.2d 979, 983 (W.D. Tenn. 2003)).

Here, Philadelphia does not challenge the authenticity of the Agreement but argues that it should be inadmissible because Plaintiffs failed to authenticate it before "[putting it] in the record." [R. 22, p. 9]. Accordingly, in the interest of justice, and because Philadelphia does not contest the Agreement's authenticity, the document is properly before the Court, and the Court will consider

it. Further, the Agreement was authenticated by ASI in the McMains Suit.  [R. 23, p. 2; R. 23–2, pp. 23–34]. Since the parties have agreed to use documents from the McMains Suit in this case, *see* [R. 13], Philadelphia's authentication argument is meritless for this reason as well.[5]

### b.  "caused, in whole or in part, by"

Philadelphia contends the McMains Suit involves Plaintiffs' negligence only, and, therefore, they argue Philadelphia has no duty to defend. [R. 22, p. 11]. Philadelphia asks the Court to read the AI Endorsement as limiting coverage to additional insureds *only* to vicarious liability for bodily injury caused by ASI's own acts and omissions, *see id.* (arguing Plaintiffs are not additional insureds because "McMains' complaint does not allege that [Plaintiffs were] vicariously liable for the conduct of ASI"). However, nothing in the Policy terms limits coverage to an additional insured's vicarious liability. Had the parties intended to cover additional insureds for vicarious liability *only*, they could have easily done so. *See American Guarantee and Liability Insurance Company v. Norfolk Southern Railway Company, et al.*, 278 F. Supp.3d 1026, 1043 (E.D. Tenn. 2017) (citation omitted) ("Had the parties intended to insure [the additional insured] for vicarious liability only, the policy could have easily referred to vicarious liability or specified whose negligence was covered and whose negligence was excluded from coverage."). The Court may not insert words or provisions that do not appear in the Policy language. *See Kemper*, 82 S.W.3d at 875–76. Philadelphia used the language "caused, in whole or in part, by" in the AI Endorsement. *See* [R. 18–1, Ex. A, p. 88]. Thus, in accordance with Kentucky law, the Court must construe this language according to its ordinary meaning unless the language is deemed to be

---

[5] Further, Philadelphia's vague and undeveloped reference to Endorsement PI–SG–005 (02/09) in the Policy does not aid Philadelphia. *See* [R. 22, pp. 5–6]. This endorsement modifies "insured contract," which is the Agreement in this case, to "not include that part of any contract or agreement that indemnifies any person or organization for liability arising out of their sole negligence." [R. 18–1, Ex. A, p. 99]. However, the Agreement between ASI and Plaintiffs is devoid of any language indemnifying Plaintiffs for liability arising out of their sole negligence. Instead, the Agreement indemnifies Plaintiffs for any liability caused by ASI while performing its duties for Plaintiffs. *See* [R. 18–4, D, p. 5, ¶ 9]. This endorsement provides no support for Philadelphia.

ambiguous. *See James Graham*, 814 S.W.2d at 279 (citing *Burke*, 258 S.W.2d at 709). This

language is not ambiguous. By its ordinary meaning, the language provides additional–insured

coverage for when "bodily injury" or "property damage" is "caused, in whole or in part, by" the

named insured and is not limited to vicarious liability. *See* [R. 18–1, Ex. A, p. 88].

Numerous courts have analyzed this very language and rejected similar arguments that it

limits coverage to vicarious liability. For example, in *Norfolk*, the court stated:

> This language undercuts [the insurance company's] argument that the policy only
> covers Norfolk's vicarious liability. The phrase "caused, in whole or in part"
> denotes shared fault, and vicarious liability, on the other hand, "is an all or nothing
> proposition." *First Mercury Ins. Co. v. Shawmut Woodworking & Supply Inc.*, 48
> F.Supp.3d 158, 173 (D. Conn. 2014), *aff'd*, 660 Fed.Appx. 30 (2d Cir. 2016). The
> AI Endorsement's use of the words "caused ... in part" can only suggest that
> coverage extends beyond mere vicarious liability arising out of the named insured's
> acts or omissions. *See id.* Instead, the language covers the additional insured for its
> own negligence so long as the named insured was also a contributing cause of the
> injury or damage giving rise to liability. *See id.* The phrase specifically denotes an
> intention to extend coverage to additional insureds for injuries and damage caused
> by "acts or omissions by both the named insured *and* the additional insured." *Pro
> Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F.Supp.2d 242, 256–57 (D. Me. 2011)
> (emphasis in original).

278 F. Supp.3d at 1042; *see also Triangle Ins. Co. v. Resolute FP US, Inc.*, No. 1:20–CV–107,

2021 WL 2690512, at *5 (E.D. Tenn. Mar. 29, 2011) (interpreting an identical provision and

holding, "[n]othing in this language limits additional-insured coverage to vicarious liability, and

the Court will not read terms into the policy that were not agreed upon by the contracting parties.").

The court in *FirstEnergy* reached the same outcome interpreting an identical provision and holding

that the policy "cover[ed] any of Plaintiffs' potential liability in the underlying suits caused in

whole or in part by [the named insured], even if that liability is not vicarious liability resulting

from [the named insured's] actions." 487 F. Supp.3d at 636; *see also Capital City Real Estate,

LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375, 380–81 (4th Cir. 2015) ("Here, the

language of the Endorsement plainly lacks the vicarious liability limitation that the [insurance

companies] seek to impose."); *Pro Con., Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp.2d 242, 256–57 (D. Me. 2011) (rejecting vicarious liability argument and concluding "that Defendant, by including the language 'in whole or in part' in its [additional insured endorsement], specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured *and* the additional insured."). Further, even if this Court were to view the AI Endorsement as ambiguous (which it does not), the Court would necessarily construe that ambiguity against Philadelphia. *See Powell–Walton–Milward, Inc.*, 870 S.W.2d at 227.

Next, Philadelphia argues the phrase "caused, in whole or in part, by" "deliberately narrows coverage under the Blanket provision" and means Plaintiffs are additional insureds only if they can show ASI is the "proximate cause of the injury." [R. 22, pp. 10–11].[6] Specifically, Philadelphia contends that Plaintiffs are not additional insureds under the AI Endorsement because McMains' injuries were the result of Plaintiffs' negligent conduct *alone*, citing the fact that McMains "made no claim against ASI" in the Underlying Complaint and deducing that "[t]he only inference to draw from these facts is that Ms. McMains alleged that Galleria's conduct was responsible alone for her injuries." *Id.* at 11. As a result, Plaintiffs should not be able to seek "reimbursement for a settlement of its own fault." *Id.* at 14.

In support of its position, Philadelphia relies on *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313 (N.Y. 2017).[7] In *Burlington*, the New York Court of Appeals evaluated the phrase "caused, in whole or in part, by" to determine if certain parties were additional insureds. *Id.* at

---

[6] At other points in its Response, Philadelphia argues additional-insured status arises only if "ASI's conduct was the *sole proximate cause of Ms. McMains' injuries.*" [R. 22, p. 10] (emphasis added). This interpretation has no grounding in the plain language of the Policy ("caused, in whole or *in part*, by"), and the Court rejects it.
[7] Philadelphia also briefly cites to *Sweazy v. Great Am. Ins. Group*, 2010 U.S. Dist. LEXIS 100353 (W.D. Ky. 2010) in support of its position. [R. 22, p. 12]. However, the Court finds *Sweazy* to be inapplicable here since it deals with the interpretation of "caused, in whole or in part, by" specifically within the context of a "disease exclusion" under an accidental death insurance policy. 2010 U.S. Dist. LEXIS 100353 at *6–8.

321–24. The court held that "caused, in whole or in part, by" language required the named insured's conduct to be the *proximate cause* of the plaintiff's injury. *Id.* at 322–24. Applying this interpretation to the dispute before it, the Court of Appeals determined that certain parties were not additional insureds because the liability arose from their *sole* negligence in failing to identify, mark, or deenergize the cable that caused the injury in the underlying suit—all actions the named insured was incapable of performing since discovery revealed that the named insured "could not have known about the location of the cable or that fact that it was electrified." *Id.* at 319, 325 (emphasis added). In other words, those parties were not additional insureds under the policy because, under the specific facts of that case, neither the named insured's acts nor omissions contributed to the employee's accident in *any way*.

While some courts hold that "caused, in whole or in part, by" can be satisfied by a standard less than proximate cause, *see Norfolk,* 278 F. Supp.3d at 1040–41 (holding the defendant is an additional insured under the insurance provision if the accident was caused in some way, even partially, by the named insured), numerous courts align with *Burlington* and utilize the proximate cause test when evaluating the scope of "caused, in whole or in part, by." *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 598 (5th Cir. 2011) ("[T]he policy here explicitly requires that the injuries be 'caused, in whole or in part, by' [the named insured] … [T]he Texas Supreme Court has defined 'caused by' as requiring proximate cause."); *Ramara*, 814 F.3d at 676 ("Ramara only must show … that [the named insured] was potentially negligent and that its negligence was a proximate cause of [the underlying plaintiff's] injuries."); *First Mercury Ins. Co. v. Shawmut Woodworking & Supply Inc.*, 48 F. Supp.3d 158, 174 (D. Conn. 2014), *aff'd*, 660 F. App'x 30 (2d Cir. 2016) ("[T]he progression from 'arising out of' to 'caused, in whole or in part, by' shows that that 'liability' refers in both instances to causation and the amendment was intended to require

14

proximate causation by the insured rather than simply but-for causation"); *Place v. P.F. Chang's China Bistro, Inc.*, No. 2:12–CV–2656–SHL–CGC, 2015 WL 11145058, at *7 (W.D. Tenn. 2015) ("The additional insured endorsement … invokes coverage for BPP as the additional insured only in circumstances where [the named insured's] actions are the proximate cause of the injury to [the underlying plaintiff] …"); *City of N.Y. v. Fleet Gen. Ins. Grp., Inc.*, No. 19–cv–6629 (RPK) (ST), 2021 U.S. Dist. LEXIS 90876, at *20–21 (E.D.N.Y. May 12, 2021) (citing *First Mercury Ins. Co. v. Preferred Contractors Ins. Co.*, 136 N.Y.S.3d 728, 728 (N.Y. App. Div. 2021)) ("Accordingly, as many courts in New York have already concluded, this language requires an insurer to defend an additional insured when the complaint alleges that actions of the named insured were a proximate cause of the damages being sought.").

As mentioned, Kentucky courts have not specifically addressed the interpretation of "caused, in whole or in part, by." Although the plain language of the phrase arguably denotes something less than proximate cause (i.e., "caused … in part"), for the purposes of this Motion, the Court will assume the language requires the higher showing of proximate cause. Thus, like numerous courts, this Court will construe "caused, in whole or in part, by" to mean that Plaintiffs are additional insureds under Philadelphia's Policy if they can show that the allegations in the Underlying Complaint, coupled with the facts known to Philadelphia at the time of its denial, support a conclusion that ASI was potentially negligent and that its negligence was a proximate cause of McMains' injuries. *See Lenning*, 260 F.3d at 581. Under Kentucky law, "to be the proximate cause of the injury, the conduct in question must be a substantial factor in causing the injury." *Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572, 577 (Ky. 2019) (citing *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 871 (Ky. Ct. App. 2001)). As explained below, Plaintiffs satisfy

15

this burden and illustrate that their claim "potentially, possibly or might come within the coverages

of the policy." *O'Bannon*, 678 S.W.2d at 392.

### ii.  The Allegations Fall Within the Scope of the Policy

Having addressed the scope of the AI Endorsement, the Court must address the second step

of the analysis. As outlined above, in Kentucky, an insurer has a duty to defend "if there is any

allegation in the complaint which potentially, possibly or might come within the coverages of the

policy." *O'Bannon,* 678 S.W.2d at 392. The determination of whether a defense is required must

be made at the outset of the litigation by reference to the complaint and known facts. *Lenning*, 260

F.3d at 581 (citing *James Graham*, 814 S.W.2d at 279). In a more recent, albeit unpublished,

opinion, the Sixth Circuit defined "known facts" as the facts known to the insurer at the time it

declined to defend its insured. *KSPED LLC v. Va. Sur. Co.*, 567 F. App'x 377, 383 (6th Cir. 2014).

The *KSPED* court reasoned:

> Indeed, permitting an insurer to ignore facts, known to it at the time it decided
> whether to defend, that establish the potential for coverage could render the duty to
> defend narrower than the duty to indemnify. 3, Jeffrey E. Thomas & Francis J.
> Mootz, III, *New Appleman on Insurance Law Library Edition: Commercial
> General Liability Insurance* § 17.01[2][b][i] (2013) (citing *Fitzpatrick v. Am.
> Honda Motor Co. Inc.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90, 92–93
> (1991) (citing cases)). Moreover, ignoring known facts inappropriately conditions
> the duty to defend on the "draftsmanship skills or whims of the plaintiff in the
> underlying action." *Appleman,* § 17.01[2][b][i] (citing *Travelers Ins. Cos. V. Penda
> Corp.,* 974 F.2d 823, 827 (7th Cir.1992)).

*Id.*; *see also Burka v. Vanderbilt Univ. Med. Ctr.*, No. 3:19–CV–00113, 2021 WL 3076783, at *11

(M.D. Tenn. July 21, 2021) (citing *KSPED*, 567 F. App'x at 383) ("[O]ther states in the Sixth

Circuit, including Kentucky … allow courts to look outside the complaint to determine whether

there is a duty to defend."); *Despain v. Hartford Ins. Co.*, No. 2017–CA–001702–MR, 2019 WL

2244744, at *7 (Ky. Ct. App. May 24, 2019) ("Particularly in light of the facts known to [the

insurance company], these initial pleadings were sufficient to trigger the duty to defend and subsequently to indemnify.")

Philadelphia argues that ASI's acts or omissions did not cause McMains' injuries, as evidenced by the fact that ASI was not named as a defendant in the McMains Suit. [R. 22, p. 11]; *see also* [R. 18–2, Ex. B]. Philadelphia interprets McMains' silence as to ASI to mean that McMains only "alleged that [Plaintiffs'] conduct was responsible *alone* for her injuries" and that "ASI's conduct was not the proximate cause of those injuries." [R. 22, p. 11] (emphasis added). In other words, Plaintiffs cannot be additional insureds under the AI Endorsement "because the liability [for McMains' injuries] arose from their *sole* negligence." *Burlington*, 29 N.Y.3d at 325 (emphasis added).

It is true that ASI is not named anywhere in the Underlying Complaint. *See* [R. 18–2, Ex. B]. However, that fact alone does not persuade the Court to hold that Philadelphia's duty to defend was not triggered in the McMains Suit. In fact, multiple courts have found a duty to defend in cases where the insurance policy contained the AI Endorsement's language "caused, in whole or in part, by" and the named insured was not a party in the underlying suit. *See FirstEnergy*, 487 F.Supp.3d at 630; *Pro Con*, 794 F. Supp.2d at 242; *Ramara*, 814 F.3d at 660; *Capital City*, 788 F.3d at 375. For the reasons stated below, such is the case here.

At the time Philadelphia denied coverage, it had sufficient facts, coupled with the allegations in the Underlying Complaint, to trigger its duty to defend. Within a few weeks of McMains filing suit in Jefferson Circuit Court, Gausepohl, on behalf of Plaintiffs and in accordance with the Agreement's terms and provisions, tendered the defense and indemnity for the suit to ASI via email. [R. 18, pp. 7–8]; *see also* [R. 18–6, Ex. F]. The email included a copy of the Underlying Complaint and the Agreement and requested ASI to forward the tender to

Philadelphia. [R. 18, p. 8; R. 18–6, Ex. F]; *see also* [R. 18–8, Ex. H, p. 3]. Upon receipt of the tender, *see* [R. 18–8, Ex. H, p. 4], Philadelphia's Hartman acknowledged that "American Services Industries provided security personnel for the garage" but denied Plaintiffs' request for defense on the mistaken ground that ASI personnel were not working the day of McMains' attack. *See* [R. 18–7, Ex. G]. However, despite Plaintiffs disproving that notion, and even sending billing records proving ASI employees were indisputably working on the day and time of McMains' attack, *see* [R. 18, p. 9; R. 18–8, Ex. H, p. 2; R. 18–9, Ex. I; R. 23, pp. 3–4], Philadelphia still refused to defend Plaintiffs in the McMains Suit. Thus, the Court finds it safe to say that at the time Philadelphia declined to defend Plaintiffs in the McMains Suit for the second time, it was fully aware that its named insured, ASI, had entered into the Agreement with Plaintiffs to provide security services and was indisputably involved in providing security in the parking garage on January 26, 2016, when McMains was attacked. It was further aware of the Agreement's provisions for additional insured coverage and of the Policy terms.

Next, the Court must determine whether these facts known at the time, coupled with the allegations in the Underlying Complaint, "potentially, possibly or might" seek to hold Plaintiffs liable for injuries "caused, in whole or in part, by" ASI. *O'Bannon,* 678 S.W.2d at 392. Stated another way, the Court must determine whether the Underlying Complaint potentially alleges that ASI's acts or omissions were a proximate cause of McMains' injuries. The Court finds that it does. From the outset, the claims in the Underlying Complaint directly implicated the provision of inadequate security services as a "direct and proximate" cause of injury, and ASI contracted with Plaintiffs to provide that security. [R. 18–2, Ex. B, p. 8, ¶ 38]. Specifically, the Underlying Complaint alleges that the "level of security was inadequate to protect Ms. McMains," [*Id.* ¶ 35]; that Plaintiffs "were negligent and/or grossly negligent in failing to make reasonable, adequate and

necessary provision for security ….," [*Id.* ⁋ 37]; and that Ms. McMains' injuries were "a direct and proximate result of the [Plaintiffs'] failure to provide reasonable, adequate, and necessary security." *Id.* ⁋ 38. Thus, the Underlying Complaint includes allegations directly linking inadequate security in the garage to McMains' injuries. As noted above, Philadelphia was well aware at the time it denied coverage that ASI was responsible for providing security on the day and time of the attack. Therefore, the Underlying Complaint's allegations "possibly" allege ASI's acts or omissions proximately "caused, in whole or in part" McMains' injuries. To hold otherwise would "inappropriately condition the duty to defend on the 'draftsmanship skills or whims of the plaintiff in the underlying action.'" *KSPED*, 567 F. App'x at 383.[8]

Further, the plain language of the Policy does not require that ASI be a named defendant in the (or any) underlying suit. *See generally James Graham*, 814 S.W.2d at 279; *Fryman*, 704 S.W.2d at 206. Instead, the Policy states that an additional insured will be covered "with respect to liability for 'bodily injury' … caused, in whole or in part, by: (1) [the named insured's] acts or omissions[.]" [R. 18–1, Ex. A, p. 88]. Interpreting language identical to that of the AI Endorsement, the Sixth Circuit has held, "[t]he additional insured provision–specifically its coverage of [the additional insured] for injury 'caused, in whole or *in part*, by" [the named insured]– 'plainly *extends coverage beyond underlying lawsuits in which a plaintiff expressly raises claims against [the named insured], requiring only that that [the named insured's] acts or omissions have some causal relationship to the injury.*" *Commerce & Indus. Ins. Co. v. Century Sur. Co.*, 809 F. App'x 311, 316 (6th Cir. 2020) (citation omitted) (emphasis added).

For all these reasons, even though ASI was not a named defendant in the McMains Suit, Plaintiffs were entitled to a defense in the McMains Suit. To construe the Policy differently would

---

[8] As mentioned previously, Plaintiffs argue McMains was unaware that ASI was the exclusive security provider until after the statute of limitations on any claims against ASI had run. [R. 18, p. 2; R. 23, p. 2].

"avoid coverage by way of semantical gymnastics" and "undermine the purpose and intent of the insurance coverage as clearly contemplated by the [Agreement]." *Wilson Equip. Co., LLC v. Motorists Mut. Ins. Co.*, No. 2017–CA–001064–MR, 2018 Ky. App. Unpub. LEXIS 524, at *4 (Ct. App. July 27, 2018).

### iii.  Factual Record

As recognized above, the determination of whether a defense is required must be made at the outset of the litigation by reference to the complaint and known facts. *Lenning*, 260 F.3d at 581 (citing *James Graham*, 814 S.W.2d at 279). Instead of relying on the allegations in the Underlying Complaint and known facts to illustrate possible coverage (i.e., the duty to defend) under the Policy, both parties point to the factual record to argue whether ASI actually "caused, in whole or in part" McMains' injuries. The Court finds an analysis of the factual record to be more appropriate when determining the duty to indemnify. *See Lenning*, 260 F.3d at 581 (citing *James Graham*, 814 S.W.2d at 279); *see also infra* Section C. Accordingly, the Court will address the parties' factual arguments as part of its holding on the duty to indemnify.

### C.  Duty to Indemnify

On January 21, 2021, Plaintiffs and McMains entered into a settlement agreement. *See* [R. 20–1, Ex. O–2]. Since Philadelphia wrongfully declined to defend Plaintiffs in the McMains Suit, it was not part of the settlement negotiations. Plaintiffs argue that because Philadelphia breached its duty to defend Plaintiffs in the McMains Suit, "it must be held liable for the costs of the settlement with McMains." [R. 18, p. 19]. Philadelphia's sole argument against Plaintiffs' indemnity claim is that ASI did not "cause[], in whole or in part" McMains' injuries, and therefore, "Galleria is not entitled to defense or indemnity[.]" [R. 22, p. 14].

When an insured asks its insurer to defend it in an action, the insurer has several options. *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 841 (Ky. 2005). Certainly, it can defend its insured. If the insurer believes there is no coverage under the policy, it can either outright refuse to defend (as in this case), or offer its defense under a reservation of rights. *Id.* The latter is the preferred course of action. *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 652 (6th Cir. 2013). An insurer that elects not to defend its insured does so at its own peril if it is later judicially determined that such a duty was owed. *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 522 (Ky.1987); *see also Ayers v. C&D Gen. Contractors*, 269 F. Supp.2d 911, 914 (W.D. Ky. 2003). That is because Kentucky courts generally recognize that an insurer that breaches its duty to defend will be liable to its insured for settlements obtained after that breach, so long as the injured party had an enforceable claim, the liability was covered by the policy, and the settlement was reasonable. *See Interstate Cas. Co. v. Wallins Creek Coal Co.*, 164 Ky. 778, 176 S.W. 217, 220–21 (1915); *Vance*, 730 S.W.2d at 522 ("[T]he insurance company, at its own peril, may elect not to defend the original action against a putative insured, although thereafter it may be liable for the judgment if it is judicially determined that the policy did in fact provide coverage in these circumstances."); *Medical Protective v. Davis,* 581 S.W.2d 25, 26–27 (Ky. Ct. App. 1979) (where insured refuses an insurer's offer to defend and elects to defend himself, "the [insurer] is bound by the result, in the absence of fraud or collusion, unless it can establish that the policy did not afford coverage or was breached by the insured."); *O'Bannon*, 678 S.W.2d at 393 (applying the reasonableness and absence-of-fraud provisions from *Medical Protective* where the insurer outright refused to defend).

"The duty to indemnify is narrower than the duty to defend because it only arises when there is an *actual basis* for the insured's liability to a third party." *Travelers Prop. Cas. Co. of Am.*

*v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269 (6th Cir. 2010) (emphasis added) (citing *James Graham Brown*, 814 S.W.2d at 279–80). To recover in indemnity for a settlement and demonstrate an "enforceable claim," the insured must "show that it could have been held liable in the [underlying litigation] for a covered claim if there had not been a settlement." *Id.; see also Wallins Creek Coal*, 176 S.W. at 221. "Stated differently, if an insured settles with a third party, but the insured would not have been actually legally liable to the third party, then the insurer does not have to indemnify the insured for having paid a settlement to the third party." *Martin Cty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 594 (6th Cir. 2013); *see also Vance*, 730 S.W.2d at 524 ("The essence of our holding is that the coverage question will turn on the *true facts as judicially determined* and not on the claims of either party, or on the allegations of the complaint against the putative insured.") (emphasis added); *Ensey v. Shelter Gen. Ins. Co.*, No. 3:17–CV– 642–RGJ, 2020 U.S. Dist. LEXIS 27157, at *8 (W.D. Ky. Feb. 18, 2020) (same). To determine whether an actual basis for liability exists, a court must "look[] beyond the pleadings to the evidence presented by" the injured party in the underlying action. *Travelers,* 598 F.3d at 269 (citing *Ky. Sch. Bds. Ins. Tr. v. State Farm Mut. Ins.*, 907 F. Supp. 1036, 1037–38 (E.D. Ky. 1995)). If the underlying litigation involves a covered claim, the court should consider whether there exists "any evidence beyond its pleadings to support such a claim." *Id.* at 270.

Accordingly, to succeed in indemnity as additional insureds, Plaintiffs must show that they "could have been legally compelled to pay the [McMains] settlement." *Martin County Coal*, 727 F.3d at 594. The issue of actual legal liability on Plaintiffs' part is undisputed. [R. 18, p. 19; R. 22, p. 11]. Not only does Philadelphia acknowledge that Plaintiffs had actual legal liability to McMains in the underlying suit, Philadelphia argues that Plaintiffs were the *sole* cause of McMains' injuries. [R. 22, p. 11]. No genuine issue of material facts exists on this point.

22

The next question is whether the settled claims were "covered" by the Policy. *Wallins Creek Coal*, 176 S.W. at 219; *see also Travelers,* 598 F.3d at 269 ("[F]or Hillerich to be entitled to indemnification … [it] would have been required to show that it could have been held liable in the [underlying] litigation for a *covered* claim if there had not been a settlement[.]") (emphasis added). This inquiry appears to implicate two questions given the specific language in the AI Endorsement at issue here. The first question is simple and asks whether the Policy covered the types of claims settled by Plaintiffs in the McMains Suit. It does. In the underlying litigation, Plaintiffs were sued for "negligence and/or gross negligence" because they failed "to provide adequate security … to protect Ms. McMains" from the bodily injuries she sustained from an attack in Plaintiffs' Fourth Street Live! parking garage. [R. 18–2, Ex. B, p. 9, ¶¶ 36, 39]. Since the Policy's AI Endorsement covers "bodily injury" and "property damage," McMains' claims fall squarely within the coverage of the AI Endorsement. [R. 18–1, Ex. A, p. 88].[9] Philadelphia does not contest this point, and it does not assert that any coverage exclusions apply. Consequently, the Court treats this issue as undisputed. *See Rugiero v. Nationstar Mortg., LLC*, 580 F. App'x 376, 378 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(e)(2)) ("If a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for the purposes of the motion."). However, this does not end the coverage question in this case.

As outlined above, the AI Endorsement contains an additional requirement for additional-insured status and coverage under the Policy – that is, ASI, the named insured, had to have "caused, in whole or in part" McMains' injuries. [R. 18–1, Ex. A, p. 88]. Thus, the second question implicates actual legal liability for ASI (as opposed to only Plaintiffs) and asks whether ASI

---

[9] McMains also alleged that Plaintiffs should be held vicariously liable for the negligent provision of security services by ASI. [R. 18–17, Ex. P (McMains' Motion for Partial Summary Judgment)].

"caused, in whole or in part" McMains' injuries, such that Plaintiffs are additional insureds and coverage exists. To make this determination, the court must "look[] beyond the pleadings to the evidence presented" in the McMains Suit. *Travelers Prop.,* 598 F.3d at 269. Having done just that, the Court finds the record demonstrates that ASI is "actually legally liable" as a proximate cause of McMains' injuries. *Martin County Coal*, 272 F.3d at 594.

The parties largely point to the deposition testimonies of Sean Ahrens, McMains' security expert in the McMains Suit, and Brandon Smith, ASI's head of security, to argue whether ASI actually "caused" McMains' injuries. [R. 18, p. 7; R. 22, pp. 12–14; R. 23, pp. 10–12].[10] But they disagree on the implications of such testimony. The Court finds the record evidence directly implicates ASI as a proximate cause of McMains' injuries and establishes ASI had "actual" liability for her injuries. Specifically, Ahrens testified as to ASI's negligence as a causal factor in McMains' injuries:

> Q: Are you critical of ASI?
>
> A: I am.
>
> Q: In what regards?
>
> A: Negligent training. They didn't follow their contract. Their contract specifically identifies what they are supposed to do, the training that they're going to be provided and the record and incident management and all these other different things that they did not do.
> …
>
> Q: "[D]o you believe that any actions or inactions by ASI were a casual factor in the alleged attack on Ms. McMains?"

---

[10] Both parties had a full opportunity to undertake discovery in this matter. [R. 14]. Instead, and by agreement, they largely relied on the record developed in the McMains Suit. *See* [R. 13; R. 18, p. 5 n. 2; R. 22, p. 9]. Philadelphia expressly advised that it "does not object to [Plaintiffs] relying on the discovery testimony of [Ms. McMains' expert, Sean Ahrens]," and in fact relied on that testimony as supporting its position that ASI did not cause McMains' injuries. [R. 22, pp. 12–14].

A: ASI was contributory in a result as it relates to their—the program they put forward.

[R. 18–14, Ex. N, pp. 3–4, 71:12–20, 74:15–17, 22–23]; *see also* R. 22–4, Ex. D, pp. 19–21, 71:12–20, 74:15–17, 22–23].

He further testified concerning ASI's failures under the contract and that the services provided by ASI failed to live up to professional standards:

> Q: So again, beyond recordkeeping, though, is there anything else that my folks [Plaintiffs] – that should have been a red flag to my folks [Plaintiffs] to say ASI is not the professional company we thought we hired, they are not keeping the premises secured?
>
> A: Yes. Because they would have been receiving informations like incident reporting, training logs, training documentation, outbriefings as required by the contract. They didn't supervise the contract. If they would have supervised the contract and asked for those things, it would have been painfully apparent that something's going on, we've got the wrong vendor.
> …
>
> Q: And they're [ASI] supposed to perform their duties in strict accordance with the recognized best practices of protective service personnel performing similar tasks in a professional, reasonable and prudent manner. Another good thing to have in a security contract?
>
> A: Yes.
>
> Q: Is it your opinion that the services provided pursuant to the contract at ASI in January of 2016 was not living up to these standards?
>
> A: Yes.

[R. 22–4, Ex. D, pp. 21, 62, 80:18–81:4, 242:16–243:2]. Ahrens also expressed additional criticism of ASI's recommendation to Plaintiffs to discontinue use of an electronic key fob system for patrols in the garage in favor of random patrols. He described the recommendation as "negligent." [R. 22–4, Ex. D, p. 65, 254:13–25]. He further opined that this recommendation, "articulates laziness, they [ASI] don't want to have supervision." *Id.* at 255:1–2. He went on to testify that, "I

25

think [Brandon Smith, ASI's Director of Security] was wanting to make his job easier." *Id.* at 255:14–15.

Further, the testimony of Brandon Smith supports the conclusion that ASI was a proximate cause of McMains' injuries. Smith confirmed that ASI, under his leadership, was responsible for overall security at Fourth Street Live!, a fact likewise confirmed by the Agreement. [R. 18–5, Ex. E, p. 6, 26:6–20; R. 18–4, Ex. D]. Indeed, ASI, at the time of the attack, was the sole provider of security services for Fourth Street Live!. [R. 18–5, Ex. E, p. 14, 124:5–11]. Smith acknowledged their responsibilities included security for the garage, testifying it was "a priority for us to make trips through the garage" about "once an hour" during the timeframe of McMains' attack. *Id.* at 12–13, 96:25–97:10.

In sum, Ahrens plainly testified that ASI's failure to provide proper security on January 26, 2016, contributed to McMains' injuries as a causal factor. Further, the Agreement and Smith's testimony confirm it was ASI's obligation to provide overall security for the parking garage during the relevant timeframe. And, indeed, ASI was the sole provider of security services on the date and time of McMains' attack. Plaintiffs demonstrated that no genuine dispute of material fact exists that ASI was a proximate cause of McMains' injuries. *Celotex*, 477 U.S. at 323. As a result, Philadelphia had the burden to produce "specific facts" showing a "genuine issue." *Id.* at 324. Rather than produce expert or other testimony countering these facts, Philadelphia cherry-picked from Ahrens' deposition testimony, claiming that Ahrens' criticisms of ASI were "limited to the fact that ASI did not write an incident report after the attack on Ms. McMains." [R. 22, p. 14]. But a review of Aherns' entire deposition belies this claim. Philadelphia effectively acknowledges that Ahrens considered ASI's conduct as "contributory" but argues "[i]f Mr. Ahrens testimony makes anything clear, it is he *did not* consider ASI's conduct to be the *sole cause* of her injuries … Nor

did Ms. McMains ever plead that ASI was negligent, much less *solely culpable . . .*" *Id.* at 13–14 (emphasis added). However, as explained above, the AI Endorsement is triggered if ASI was *a proximate cause* of McMains' injuries, not upon a showing that it was the *sole cause*.[11] This fact is clearly established by the record, including Ahrens' testimony. Even construing the evidence in the light most favorable to Philadelphia, Philadelphia has failed to come forward with any "specific facts" to counter such a conclusion. *Celotex*, 477 U.S. at 324. Thus, the "true facts as judicially determined" demonstrate ASI was a proximate cause of McMains' injuries, satisfying the actual legal liability standard. *Vance*, 730 S.W.2d at 524; *see also Travelers Prop.,* 598 F.3d at 269; *Martin County Coal*, 272 F.3d at 594.

Lastly, the Court will address whether the settlement was reasonable and reached in the absence of fraud or collusion. *Wallins Creek Coal*, 176 S.W. at 219; *O'Bannon*, 678 S.W.2d at 393. Plaintiffs presented evidence that the settlement was achieved only after two mediators spent a total of 19.2 hours working with all parties to reach a "fair and amicable agreement." [R. 18, p. 19]; *see also* [R. 20, Exs. O–1 (billing records from mediation) and O–2 (the settlement agreement)]. Plaintiffs argue this settlement avoided "significant risks" of trial, including the potential for a substantial pain and suffering award based on McMains' extensive physical and psychological injuries. [R. 18, pp. 19–20]. The below excerpt is only a portion of McMains' testimony describing the traumatizing events that led to such injuries:

> A: … I was body tackled … But then he said, give me all your fucking money. Or he said, shut up, shut up, give me all your fucking money.
>
> Q: I mean, were you screaming? Were you yelling? What were you doing?
>
> A: I think I was going no, no, no, no, no. I just was trying to process what was happening. Because part of me was trying to wake up, like I thought it was a dream, like I couldn't believe – I was not fully understanding what was happening. So he jabbed me in the stomach, demanded my money.

---

[11] *Supra* note 6, at 13.

…

A: So he had kind of like tackled me into the car, where my head hit and I felt the impact to my stomach. He was muffling my mouth … [with] my own scarf, enough that I had the fibers stuck in my teeth[.]
…

A: [A]nd then he held the knife up to my eyes, and so … I thought he had just stabbed me in the abdomen … I would have given him my whole life. Before I could give him money, he hit me across the left cheek.

Q: With what?

A: I guess his fist.
…

Q: Were you ever actually stabbed?

A: He stabbed – he tried to, but it never pierced my skin.

[R. 18–11, Ex. H, pp. 13–14, 17, 20, 184:23, 187:2–16, 190:5–11, 192:18–193:4, 18–20]. Plaintiffs also argue the negotiated settlement was "a small fraction of the damages McMains could have blackboarded at trial, which … were indicated to be as high as $4,400,000.00." *Id.* at 20; *see also* [R. 20, Ex. O–2].

To survive summary judgment, Philadelphia had to point to "specific facts" that created a genuine issue of material fact with regard to the reasonableness of the settlement. *Celotex*, 477 U.S. at 324. Philadelphia wholly failed in this regard. Philadelphia made no argument whatsoever, much less a factual showing, that the settlement was unreasonable or the product of fraud or collusion. Thus, the Court considers this issue undisputed.[12] *See Rugiero*, 580 F. App'x at 378

---

[12] As mentioned previously, on January 21, 2021, Plaintiffs and McMains entered into a settlement agreement. *See* [R. 20–1, Ex. O–2]. Since Philadelphia wrongfully declined to defend Plaintiffs in the McMains Suit, it was not part of the settlement negotiations. As a result, the settlement agreement was not signed by Philadelphia. Philadelphia makes no argument that Plaintiffs breached the Policy or that the settlement is not an "agreed settlement" under its provisions because it was not signed by Philadelphia, [R. 18–1, Ex. A, p. 56], and any such argument would be meritless. Philadelphia waived its right to require consent when it breached its duty to defend. *Point/Arc of N. Ky., Inc. v. Phila. Indem. Ins. Co.*, 154 F. Supp.3d 503, 513 (E.D. Ky. 2015) ("It is true that the policy … required [Philadelphia's] consent before any settlement was reached … But it is equally true that, by breaching its duty to defend, [Philadelphia] waived any right to enforce that provision of the contract."); *see also Wallins Creek Coal*,

(quoting Fed. R. Civ. P. 56(e)(2)) ("If a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for the purposes of the motion."). Construing the evidence in the light most favorable to Philadelphia, the Court finds Plaintiffs and ASI had actual legal liability for McMains' injuries, the Policy covered the claims brought by McMains, the settlement was reasonable, and there is no evidence of fraud or collusion. Consequently, Philadelphia has a duty to indemnify Plaintiffs in the McMains Suit.

### D.  The Agreement: Contractual Indemnitees

Because the Court has found that Plaintiffs were entitled to a defense and indemnity in the McMains Suit as additional insureds, the Court will not address Plaintiffs' alternative argument for defense and indemnification under the policy's contractual indemnity provision. [R. 18, pp. 20–25; R. 23, pp. 12–14].

### IV.     Conclusion

The record, even construed in the light most favorable to Philadelphia, supports Plaintiffs' claim for defense and indemnification. Thus, the Court will grant Plaintiffs' Motion for Summary Judgment [R. 18]. Accordingly, **IT IS HEREBY ORDERED** as follows:

1.   The Plaintiffs' Motion for Summary Judgment [R. 18] is **GRANTED**.

This the 25th day of March, 2022.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

164 Ky. at 781–83 (where the court found the insurer waived the policy provision prohibiting a settlement unless directed in writing because the insurer failed to take any steps with regard to a claim against its insured, including informing the insured that it was denying liability); *St. Louis Dressed Beef & Provision Co. v. Md. Cas. Co.*, 201 U.S. 173 (1906) (where the Court concluded that the insurer, by denying liability and failing to defend the suit, waived the policy provision prohibiting a settlement without written consent); *Uto-Owners Ins. Co. v. Spalding*, 573 S.W. 3d 626, 632–33 (Ky. Ct. App. 2019) (quoting *Stephens v. State Farm Mut. Auto. Ins. Co.*, 508 F.2d 1363, 1366 (5th Cir. 1975)) (explaining the rationale behind the waiver theory).